CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW, State Bar No. 194668
   *burrow@caldwell-leslie.com*
ARWEN R. JOHNSON, State Bar No. 247583
   *johnson@caldwell-leslie.com*
MATTHEW O'BRIEN, State Bar No. 261568
   *obrien@caldwell-leslie.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendants Warner Bros.
Entertainment Inc., Legend Pictures, LLC
(erroneously sued as Legendary Pictures),
Christopher Nolan, Jonathan Nolan, David
S. Goyer, Andrew Wachowski, and Lana
Wachowski

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| CONSTANTINO BASILE, an individual,<br><br>                Plaintiff,<br><br>        v.<br><br>WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; LEGENDARY PICTURES, a California corporation; CHRISTOPHER NOLAN, an individual; JONATHAN NOLAN, an individual; DAVID S. GOYER, an individual; ANDREW WACHOWSKI, an individual; LANA WACHOWSKI, an individual; and JOHN/JANE DOES 1 through 10, inclusive,<br><br>                Defendants. | Case No. CV 15-5243-DMG (MRWx)<br><br>The Honorable Dolly M. Gee<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT WITH PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[(Proposed) Order; Request for Judicial Notice filed concurrently herewith]<br><br>Date:      September 11, 2015<br>Time:      9:30 am.<br>Courtroom:  7 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 11, 2015 at 9:30 a.m. or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Dolly M. Gee, located in the United States Courthouse, 312 N. Spring Street, Courtroom 7, Los Angeles, CA 90012, Defendants Warner Bros. Entertainment Inc., Legend Pictures, LLC (erroneously sued as Legendary Pictures), Christopher Nolan, Jonathan Nolan, David S. Goyer, Andrew Wachowski, and Lana Wachowski (collectively, "Defendants") will and hereby do move this Court to dismiss Plaintiff's Complaint with prejudice on the grounds that (1) Plaintiff's claim for copyright infringement fails because, as a matter of law, the works at issue are not substantially similar in a manner protected by copyright law; and (2) the defects in Plaintiff's claim for copyright infringement cannot be cured by an amendment of the Complaint.

Pursuant to Local Rules 7-3 and 16-12(c), no conference of counsel was required because Plaintiff is proceeding *pro se*. Nevertheless, this Motion is made following a conference between Defendants' counsel Matthew O'Brien and Plaintiff on August 5, 2015.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

CALDWELL
LESLIE &
PROCTOR

-1-

1    This Motion is based on this Notice of Motion, the accompanying

2  Memorandum of Points and Authorities, the [Proposed] Order and Request for

3  Judicial Notice filed concurrently herewith, all of the pleadings and other documents

4  on file in this case, all other matters of which the Court may take judicial notice, and

5  any further argument or evidence that may be received by the Court at the hearing.

6

7  DATED:  August 10, 2015            CALDWELL LESLIE & PROCTOR, PC

8

9

10            By  _____/s/_____

11                 LINDA M. BURROW
                   Attorneys for Defendants Warner Bros.
12                 Entertainment Inc., Legend Pictures, LLC
                   (erroneously sued as Legendary Pictures),
13                 Christopher Nolan, Jonathan Nolan, David S.
                   Goyer, Andrew Wachowski, and Lana
14                 Wachowski

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND .............................................................. 2

    A.   Plaintiff's Works ...................................................................... 2

    B.   The Dark Knight Rises ............................................................ 4

    C.   Jupiter Ascending ..................................................................... 7

III.  LEGAL STANDARD FOR A RULE 12(b)(6) MOTION ............................. 10

IV.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ......... 11

    A.   Legal Standard for Direct Copyright Infringement ............................. 11

    B.   The Dark Knight Rises Is Not Substantially Similar to Plaintiff's Works ................................................................................. 12

        1.   Plot and Sequence of Events ................................. 12

        2.   Characters ................................................... 15

        3.   Mood, Pace, Theme, Setting, and Dialogue ................................ 17

    C.   Jupiter Ascending Is Not Substantially Similar to Plaintiff's Works ................................................................................. 19

        1.   Plot and Sequence of Events ................................. 19

        2.   Characters ................................................... 21

        3.   Mood, Pace, Theme, Setting, and Dialogue ................................ 22

    D.   Plaintiff's Conspiracy Allegations Are Irrelevant ................................ 23

    E.   Leave to Amend Would Be Futile ...................................................... 24

V.    CONCLUSION ................................................................................. 24

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Althouse v. Warner Bros. Entm't*,
   No. CV 13-00696, 2014 WL 2986939 (C.D. Cal. Apr. 28, 2014)................ 15, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................... 10, 11

*Benay v. Warner Bros. Entm't, Inc.*,
   607 F.3d 620 (9th Cir. 2010) ........................................... 13, 15, 16, 20, 21

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985) .............................................. 12, 15, 20

*Campbell v. Walt Disney Co.*,
   718 F.Supp.2d 1108 (N.D. Cal. 2010)...................................... 2, 17, 24

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ....................................... 12, 15, 18, 20, 21

*Christianson v. W. Publ'g Co.*,
   149 F.2d 202 (9th Cir. 1945) ........................................................ 1, 12

*Feldman v. Twentieth Century Fox Film Corp.*,
   723 F.Supp.2d 357 (D. Mass. 2010)...................................... 14, 15, 17

*Flaherty v. Filardi*,
   388 F.Supp.2d 274 (S.D.N.Y. 2005) ................................................ 14

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
   462 F.3d 1072 (9th Cir. 2006) ................................................... *passim*

*Gadh v. Spiegel*,
   No. CV 14-855, 2014 WL 1778950 (C.D. Cal. Apr. 2, 2014)........................ 24

*Goldberg v. Cameron*,
   787 F.Supp.2d 1013 (N.D. Cal. 2011)........................................ 18, 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Knappenberger v. City of Phoenix*,
    566 F.3d 936 (9th Cir. 2009) ................................................................. 24

*Kouf v. Walt Disney Pictures & Television*,
    16 F.3d 1042 (9th Cir. 1994) ................................................... 12, 13, 20

*Mandeville-Anthony v. Walt Disney Co.*,
    No. CV 11-2137, 2012 WL 4017785 (C.D. Cal. July 28, 2012) ........................ 24

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ................................................................. 11

*Muller v. Twentieth Century Fox Film Corp.*,
    794 F.Supp.2d 429 (S.D.N.Y. 2011) .................................................... 14

*Olson v. Nat'l Broad. Co., Inc.*,
    855 F.2d 1446 (9th Cir. 1988) ................................................ 15, 18, 23

*Phillips v. Murdock*,
    543 F.Supp.2d 1219 (D. Haw. 2008) ................................................... 21

*Stechman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ................................................ 2, 13, 19

*Stromback v. New Line Cinema*,
    384 F.3d 283 (6th Cir. 2004) ............................................................ 18, 23

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ................................................................. 11

*UMG Recordings, Inc. v. Augusto*,
    628 F.3d 1175 (9th Cir. 2011) ............................................................... 11

*United States v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ............................................................ 1, 11

*Van Buskirk v. Cable News Network, Inc.*,
    284 F.3d 977 (9th Cir. 2002) ................................................................. 11

*Walker v. Time Life Films, Inc.*,
    784 F.2d 44 (2d Cir. 1986) ................................................................. 14

*Zella v. E.W. Scripps Co.*,
    529 F.Supp.2d 1124 (C.D. Cal. 2007) ............................................. 1, 12

CALDWELL
LESLIE &
PROCTOR

-iii-

**Statutes**

Cal. Code Civ. Proc. § 391(b) ........................................................................ 9

**Other Authorities**

Fed. R. Civ. Proc. § 8(a)(2) ........................................................................ 10

Fed. R. Civ. Proc. § 12(b)(6) ................................................................ 10, 11

L.R. 83 ............................................................................................................ 9

L.R. 83-8.2 ..................................................................................................... 9

L.R. 83-8.4 ..................................................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Constantino Basile ("Plaintiff") submitted two homework assignments ("Plaintiff's Works") to his film school in September 2011:  a two-paragraph summary of a creation myth he entitled *The World of Jupiter* (*see* Compl., ¶¶ I, XII, Exh. 2); and an eight-slide description of a science-fiction concept he entitled *Crisis on Jupiter*, whose characters were based on photographs Plaintiff admits he copied from the Internet.  (*See id.*, ¶¶ I, XII, Exh. 1.)  As he did in his three prior lawsuits (*see* Part II.D, *infra*), Plaintiff claims that major motion pictures—in this case, *The Dark Knight Rises* and *Jupiter Ascending*—infringe upon these two assignments.

Plaintiff's Works and the two alleged infringing films are part of his Complaint (*see* Compl., Exhs. 1, 2, 14, 23), and this Court may therefore determine non-infringement as a matter of law on a motion to dismiss.  *See Christianson v. W. Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945) (citing cases).[1]  And because no reasonable jury could find that Plaintiffs' Works are substantially similar to either *The Dark Knight Rises* or *Jupiter Ascending*, this Court should grant Defendants'[2] motion and dismiss Plaintiff's complaint in its entirety.  *See Zella v. E.W. Scripps Co.*, 529 F.Supp.2d 1124, 1130-31 (C.D. Cal. 2007) (citing cases and observing that

---

[1] Even if Plaintiff had not submitted either his Works or the alleged infringing films as part of his Compliant, this Court could still determine similarity on a motion to dismiss, because Plaintiff's Complaint "necessarily relies" on the contents of each work.  *See United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

[2] Defendants are Warner Bros. Entertainment Inc. (producer and distributor of *The Dark Knight Rises* and *Jupiter Ascending*), Legend Pictures, LLC (whose predecessor Legendary Pictures, Inc. was a producer of *The Dark Knight Rises*; erroneously sued as Legendary Pictures), Christopher Nolan (director and co-writer of *The Dark Knight Rises*), Jonathan Nolan and David S. Goyer (other credited writers of *The Dark Knight Rises*), and Andrew and Lana Wachowski (directors and writers of *Jupiter Ascending*).

"[f]or fifty years, courts have…dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss)").  Indeed, because no amendment could change the fact that Plaintiff's Works are not similar to either of the alleged infringing films, this Court should dismiss Plaintiff's Complaint with prejudice and without leave to amend.  *See Campbell v. Walt Disney Co.*, 718 F.Supp.2d 1108, 1116 (N.D. Cal. 2010) (denying leave to amend where the works were not substantially similar as a matter of law).

## II.    FACTUAL BACKGROUND[3]

### A.    *Plaintiff's Works*

Exhibits 1 and 2 to the Complaint are "mp4" files apparently showing continuous computer screenshots of someone opening attachments to Plaintiff's emails and then perusing those email attachments.  (*See* Compl., Exhs. 1, 2.)  The email attachment depicted in Exhibit 1 is a PowerPoint presentation entitled *Crisis on Jupiter*, with eight slides containing photographs accompanied by text.  (*See id.*, Exh. 1.)  The PowerPoint presentation itself is not one of the Complaint's 37 exhibits.  As for Exhibit 2, the email attachment it depicts is a Word document entitled *Jupiter*,[4] apparently containing two paragraphs of text, between which the "mp4" file toggles back and forth.  (*See id.*, Exh. 2.)  As with the PowerPoint presentation, Plaintiff did not include the Word document itself as an exhibit.

Plaintiff alleges that he submitted his works (presumably the PowerPoint presentation and Word document depicted in Exhibits 1 and 2 (collectively, "Plaintiff's Works")) as assignments to the Los Angeles Film School in September

---

[3] For the purposes of this Motion, Defendants accept as true the factual allegations in the Complaint, except those that are flatly contradicted by judicially noticeable facts.  *See Stechman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).  For the record, Defendants vehemently deny Plaintiff's factual allegations.

[4] Because the Complaint refers to this assignment as *The World of Jupiter*, Defendants do the same herein.

2011.  (*See* Compl., ¶¶ I, XII.)  Plaintiff further alleges that he registered "[t]hese literary works" with the United States Copyright Office.  (*Id.*, ¶ XIV.)

This Court previously summarized Plaintiff's Works in the following manner, which is equally applicable here:

> In Basile's "*The World of Jupiter*," Jupiter, "the Supreme Being and creator of all things," created a beautiful world.  At first, the society "lived in peace following the teachings of Jupiter."  As society grew, however, people became more selfish and "began to fight and kill and take from others," disregarding the rules of Jupiter.  This occurred "[u]ntil one day an enormous object appeared in the sky, larger than any star . . . Jupiter had returned with a vessel for the damned."  He "cursed his people with enormous waves that began destroying hundreds of thousands of people at a time."  Only those who were faithful to Jupiter were spared, and they "would go on to live in peace for eternity."

> It is not clear how Basile's other work, "*Crisis on Jupiter*," relates to "*The World of Jupiter*," and whether they depict the same world or planet, but both involve a "Supreme Being" called Jupiter.  After the discovery of time travel, "the world was plagued with problems."  The global military "regulated all travel" until Cipher, who was in the military, abused his position and began unauthorized traveling to bring back technology and sell it to corporations.  In pursuit of world dominion, Cipher obtained "brain implant technology," which he kept for himself, and stole technology to create his own time travel machine.  Two brothers, Earth and Mars, were chosen to hunt for the "second time machine" because "Cipher cannot see their actions when he travels through time."  Their mentor Kurzweil can help them counter

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

1   Cipher's advanced technology, but the brothers must face betrayal and

2   attacks against them to save the world.

3   (Defendants' Request for Judicial Notice ("RJN"), Exh. E at 6 (internal citations

4   omitted); *id.*, Exh. G at 5 (same).)

5   **B.   The Dark Knight Rises**

6   *The Dark Knight Rises* premiered in 2012 as the third installment of

7   Defendant Christopher Nolan's Batman trilogy, following *Batman Begins* and *The*

8   *Dark Knight*.  (*See* RJN, Exh. H.)  *The Dark Knight Rises* was written by

9   Defendants Jonathan Nolan and Christopher Nolan, with story by Defendants

10   Christopher Nolan and David S. Goyer, and was directed by Christopher Nolan.

11   (*See id.*)

12   *The Dark Knight* (the second film in the trilogy) ended with the killing of

13   Gotham District Attorney Harvey Dent, who, upon the death of his fiancé Rachel

14   Dawes (childhood friend of Bruce Wayne, aka Batman), is transformed from

15   idealistic crime fighter to murderous vigilante Two-Face.  To protect Dent's legacy

16   as a symbol of hope for Gotham City, Batman convinces Police Commissioner

17   James Gordon to frame him for murders Dent committed.  Gordon then destroys the

18   Bat Signal and Batman appears to be gone forever.

19   *The Dark Knight Rises* picks up eight years later, where a law called the Dent

20   Act appears to have nearly eradicated organized crime.  (RJN, Exh. H at 7:13.)

21   Batman has never resurfaced, and his alter-ego, millionaire Bruce Wayne, has

22   become a recluse.  Cat burglar Selina Kyle (aka Catwoman) obtains Wayne's

23   fingerprints from his home (*id.* at 15:58) and kidnaps a congressman.  (*Id.* at 19:17.)

24   Kyle hands Wayne's fingerprints to Phillip Stryver, an assistant to Wayne's business

25   rival John Daggett, in exchange for Stryver's promise to give her a computer

26   program that would allow her to clear her criminal record.  (*Id.* at 19:32.)  Stryver

27   double-crosses Kyle, but Kyle tricks Daggett into using the congressman's stolen

28   phone to alert the police to their location.  (*Id.* at 21:10.)  Commissioner Gordon and

the police arrive to find the congressman, and then pursue Stryver's men into their hideout in Gotham's sewer tunnels, while Kyle flees.  (*Id.* at 23:00.)  A masked militant named Bane captures Gordon.  (*Id.* at 24:38.)  Gordon escapes, but is wounded, and is rescued by John Blake (*id.* at 26:23), a once-orphaned patrol officer who had deduced Batman's true identity as Bruce Wayne.  (*Id.* at 29:10.)  Gordon promotes Blake to detective, with Blake reporting directly to him.  (*Id.* at 1:07:21.)

Wayne's company, Wayne Enterprises, is bankrupted when Bane attacks the Gotham Stock Exchange (*id.* at 42:30) using Wayne's fingerprints.  (*Id.* at 57:00, 1:00:02.)  Wayne Enterprises had, for the past several years, been developing a fusion nuclear reactor, which, once operational, would provide clean energy for all of Gotham.  Fearing that Daggett, Bane's employer, would gain access to the reactor, Wayne asks Wayne Enterprises board member Miranda Tate—the reactor program's biggest supporter—to take over his company.  (*Id.* at 1:01:57.)

Batman asks Kyle to take him to Bane.  Kyle leads him into a trap set by Bane, who reveals that he intends to destroy Gotham, to complete a mission begun by notorious villain Ra's al Ghul.  (*Id.* at 1:11:35, 1:13:40.)  Bane fights Wayne and delivers a crippling blow to his back (*id.* at 1:15:28), before taking him to a subterranean prison.  (*Id.* at 1:18:32.)  The inmates tell Wayne the story of the only prisoner ever to have escaped—al Ghul's child, who was born in the prison and cared for by a fellow prisoner before escaping.  Wayne assumes (ultimately incorrectly) that the child is Bane.  (*Id.* at 1:22:57.)

Meanwhile, Bane lures the Gotham police into the underground sewer network and collapses the exits, trapping the police inside.  (*Id.* at 1:30:26.)  He kills the mayor (*id.* at 1:29:47) and forces an abducted physicist, Dr. Leonid Pavel, to convert the core of Wayne's reactor into a nuclear bomb.  (*Id.* at 1:25:36.)  Bane uses the bomb to hold Gotham hostage and isolate the city from the world.  (*Id.* at 1:35:35.)  Bane, using a speech written, but never given, by Gordon, reveals Gordon's cover-up of Dent's crimes (*id.* at 1:37:37) and releases the prisoners of

-5-

Gotham's Blackgate Penitentiary (who largely had been convicted under the Dent Act), which leads to a revolution.  (*Id.* at 1:39:58.)  Gotham's wealthy and powerful have their property expropriated, are dragged from their homes (*id.* at 1:40:30), and are given show trials.  (*Id.* at 1:40:38, 1:57:58, 2:03:08.)

After recovering from his injury, Batman escapes from the prison (*id.* at 1:56:50) and enlists Kyle (as Catwoman), Blake, Tate, Gordon, and Lucius Fox (Wayne's business manager) to help stop the bomb's detonation.  (*Id.* at 2:01:55.) When the police and Bane's forces clash, Batman defeats Bane, but Tate intervenes and stabs Batman, revealing herself to be Talia al Ghul, Ra's al Ghul's daughter, and that she—not Bane—was the child who had escaped from prison.  (*Id.* at 2:17:07.)  Tate attempts to destroy Gotham by detonating the bomb, but Gordon, using a signal blocker given to him by Batman, temporarily thwarts her plan.  (*Id.* at 2:20:23.)  With thirteen minutes remaining before the bomb explodes, Talia leaves to find the bomb while Bane prepares to kill Batman, but Kyle shoots Bane.  (*Id.* at 2:22:35.)  Batman pursues Talia with the Bat, an aircraft Fox developed during Batman's absence, hoping to bring the bomb back to the reactor where it can be stabilized.  (*Id.* at 2:24:18.)  Talia's truck crashes, but she remotely destroys the reactor before dying.  (*Id.* at 2:27:43.)  With no way to stop the detonation, Batman uses the Bat to haul the bomb over the bay, where it explodes.  (*Id.* at 2:31:10.)

In the aftermath, Batman is presumed dead and is honored as a hero.  (*Id.* at 2:33:39.)  With Wayne also presumed dead, his home Wayne Manor is left to the city to become an orphanage, and his remaining estate is left to his longtime butler and confidant, Alfred Pennyworth (*id.* at 2:34:16), who later discovers that Wayne is not, in fact, dead when he sees him in Florence with Kyle.  (*Id.* at 2:36:20.)  Blake resigns from the police force and inherits the Batcave, foreshadowing the next Batman.  (*Id.* at 2:36:35.)

## C.    Jupiter Ascending

*Jupiter Ascending* premiered in February 2015.  (*See* RJN, Exh. I.)  *Jupiter Ascending* was written and directed by Defendants Andrew and Lana Wachowski. (*See id.*)

*Jupiter Ascending* opens with a voiceover by Jupiter Jones, the film's protagonist.  Jupiter is the daughter of Maximilian Jones, who met Jupiter's mother Aleksa while they were both professors in Leningrad, Russia.  (RJN, Exh. I at 1:00.) Maximilian is killed in a robbery while Aleksa is pregnant with Maximilian's child. (*Id.* at 2:56.)  Aleksa names the child Jupiter, after Maximilian's favorite planet (*id.* at 1:58), and they move to Chicago to live with Aleksa's family.

On another planet, after the death of the matriarch of the House of Abrasax, the matriarch's children (Balem, Kalique, and Titus) quarrel over their inheritance, which includes Earth.  (*Id.* at 7:05.)  (Later in the film, it is revealed that Earth's residents are unaware that the humans on Earth and countless other planets were established by families of trans-human and alien royalty—including the Abrasax— for the purpose of later "harvesting" (*id.* at 46:30) the resulting organisms to produce a type of youth serum for the elites on other planets.  (*Id.* at 55:42, 1:14:45).)

At the same time, back on Earth, a grown-up Jupiter Jones works with Aleksa and her Aunt Nino to clean the homes of wealthy neighbors.  (*Id.* at 8:15.)  Three intergalactic bounty hunters are scoping out Jones' apartment, when they spot someone else (Caine Wise) looking for Jones as well.  (*Id.* at 9:51.)  A chase ensues, but Wise escapes.  (*Id.* at 11:58.)

At Jones's friend Katharine Dunlevy's residence, Dunlevy and Jones are attacked by extraterrestrial "Keepers."  (*Id.* at 16:10.)  When Jones photographs them, they erase her memory of the incident.  (*Id.* at 16:17.)  Jones decides to buy a telescope, and agrees to sell her eggs to pay for it with the help of her cousin Vladie. (*Id.* at 19:00.)  During the egg donation procedure, the doctors and nurses are

1    revealed to be Balem's agents, sent to kill her (*id.* at 20:38), and she is saved by

2    Wise.  (*Id.* at 21:24.)

3        Back on the alien planet, Wise is revealed to be a genetically engineered ex-

4    military hunter, whom Titus has sent to Earth to track down Jones.  (*Id.* at 22:02.)

5    Back in Chicago, Wise informs Jones that he is an alien (*id.* at 23:50), and that the

6    Keepers are trying to kill her.  (*Id.* at 24:36.)  Another lengthy chase ensues (*id.* at

7    26:34), during which much of downtown Chicago is destroyed, but Titus and Wise

8    eventually escape the bounty hunters.  (*Id.* at 31:25.)  Wise informs Jones that she is

9    in the center of a fight among the Abrasax heirs, one of the most power dynasties in

10   the universe.  (*Id.* at 31:47.)

11       Wise and Jones drive from Chicago to visit Stinger Apini, one of Wise's old

12   comrades, who realizes that Jones is royalty because of the way swarms of bees

13   obey her.  (*Id.* at 37:58.)  Apini agrees to help Jones (*id.* at 40:26), but a group of

14   bounty hunters captures her.  (*Id.* at 48:55.)  They take her to Kalique's palace on a

15   distant planet (*id.* at 51:50), where Kalique explains that Jones is genetically

16   identical to the dead matriarch, and therefore the Earth's rightful owner.  (*Id.* at

17   52:50, 57:10.)  Supported by Captain Tsing of the Aegis (an intergalactic police

18   force) (*id.* at 58:33), Wise retrieves her from Kalique, and brings her to the planet

19   Ores (the intergalactic capital city) to claim her inheritance.  (*Id.* at 58:46, 1:06:56.)

20       Apini double-crosses Wise on behalf of Titus, who detains Jones and Wise.

21   (*Id.* at 1:10:00.)  Titus reveals his plan to marry and then kill Jones and claim Earth,

22   and then throws Wise into the void.  (*Id.* at 1:17:58.)  Wise survives and saves

23   Jones.  (*Id.* at 1:28:28.)  Jones asks to return home, but learns that her family has

24   been taken hostage by Balem.  (*Id.* at 1:30:30.)

25       In his refinery on another planet (which has a "Great Red Spot"), Balem

26   demands Earth in exchange for Jones's family.  (*Id.* at 1:38:02.)  Realizing that

27   Balem can "harvest" Earth only with her permission, Jones refuses.  (*Id.* at 1:40:54.)

28   Balem tries to kill Jones, but she is rescued by Wise (*id.* at 1:42:14) and later defeats

Balem in a fight, after which Balem falls to his death.  (*Id.* at 1:50:53.)  Wise saves
Jones again, the refinery is destroyed, and they escape with Apini and Tsing.  (*Id.* at
1:52:53.)

Jones's family is returned home with no memory of their disappearance (*id.* at
1:54:20), while Jones secretly retains ownership of the Earth.  (*Id.* at 1:56:08.)  Her
family buys her the telescope she wanted (*id.* at 1:55:18) and Wise receives a pair of
wings earlier removed from his body.  (*Id.* at 1:56:44.)  During the ending credits it
is revealed that the planets that make up the universe form endless DNA patterns.
(*Id.* at 2:00:16.)

### D.    *Plaintiff's Complaint*

Plaintiff alleges that after he submitted his Works to his instructors at the Los
Angeles Film School, the Works were sold to "other writers, who fused Plaintiff's
material into the various films they were writing at that time" (Compl., ¶ XV),
including the two films at issue here, *Jupiter Ascending* and *The Dark Knight Rises.*
(*Id.*, ¶ XV; *id* at 8-16, 17-29.)

As this Court is well aware, this is Plaintiff's fourth such lawsuit.  (*See*
Compl. at 37-38.)[5]

- In *Basile v. Los Angeles Film School, LLC*, No. CV 14-00412 DMG
    (MRW), Plaintiff alleged, *inter alia*, that *Prometheus*, *Men in Black III*,
    and *The Dark Knight Rises* infringed upon Plaintiffs' Works, and he
    sought $2.2 billion in damages for this infringement and other torts.

---

[5] The Central District's Local Rules expressly reference California Code of Civil
Procedure section 391(b), which defines a "vexatious litigant" as a person that has
commenced at least five unmeritorious litigations in a seven-year period.  L.R. 83-
8.4.  Should Plaintiff file a fifth lawsuit, this Court should invoke the protections
afforded under Local Rule 83, including but not limited to "a directive to the Clerk
not to accept further filings from the litigant . . . without written authorization from a
judge of the Court or a Magistrate Judge, issued upon such showing of the evidence
supporting the claim as the judge may require."  L.R. 83-8.2.

(*See* RJN, Exh. A.)  This Court granted the defendant's motion to compel arbitration on April 24, 2014 (*see id.*, Exh. B), and on July 13, 2015, the arbitrator issued her final award rejecting each of Plaintiff's claims and ordering Plaintiff to pay $96,573 in attorneys' fees and costs.  (*See id.*, Exh. C.)[6]

- In *Basile v. Twentieth Century Fox Film Corp.*, No. CV 14-04263 DMG (JPR), Plaintiff alleged that *Prometheus* infringed upon Plaintiffs' Works and sought $2 billion in damages.  (*See id.*, Exh. D.) On August 19, 2014, this Court granted the defendants' motion to dismiss Plaintiff's copyright claim without leave to amend.  (*See id.*, Exh. E.)

- In *Basile v. Sony Pictures Entertainment, Inc.*, No. CV 14-04264-DMG (JPR), Plaintiff alleged that *Men in Black III* infringed Plaintiffs' Works and sought $2 billion in damages.  (*See id.*, Exh. F.)  On August 19, 2014, this Court granted the defendants' motion to dismiss without leave to amend.  (*See id.*, Exh. G.)

## III.    LEGAL STANDARD FOR A RULE 12(b)(6) MOTION

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. Proc. 8(a)(2)).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing

---

[6] Plaintiff's motion to vacate this award is currently pending before this Court.

*Twombly*, 550 U.S. at 556).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*

While, ordinarily, the Court may only look to the face of the complaint when deciding a Rule 12(b)(6) motion, *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), the Court may also consider evidence on which the complaint "'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).  "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'"  *Marder*, 450 F.3d at 448 (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

## IV.  PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND

### A.  *Legal Standard for Direct Copyright Infringement*

"To establish a prima facie case of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act."  *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); 17 U.S.C. § 501(a)).  "Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'"  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (quoting *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996)).

"[W]hen the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be

1  determined on a motion to dismiss." *Christianson v. W. Publ'g Co.*, 149 F.2d 202,
2  203 (9th Cir. 1945) (citing cases).  The Court may grant a motion to dismiss a
3  copyright infringement claim if it concludes that no reasonable jury could find that
4  the works are substantially similar.  *See Zella v. E.W. Scripps Co.*, 529 F.Supp.2d
5  1124, 1130-31 (C.D. Cal. 2007) (citing cases).

6       The substantial-similarity test contains an extrinsic and intrinsic component.
7  *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir.
8  2006).  At the pleadings stage, only the objective, extrinsic test applies.  *See id.*
9  (intrinsic test is "exclusively the province of the jury"); *Zella*, 529 F.Supp.2d at
10  1133 (same).  The Court "must take care to inquire only whether 'the *protectable*
11  *elements, standing alone*, are substantially similar.'"  *Cavalier v. Random House,*
12  *Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (quoting *Williams v. Crichton*, 84 F.3d 581,
13  588 (2d Cir. 1996)) (emphasis in original).  "[W]hen applying the extrinsic test, a
14  court must filter out and disregard the non-protectible elements in making its
15  substantial similarity determination."  *Id.* at 822-23 (citing *Shaw v. Lindheim*, 919
16  F.2d 1353, 1361 (9th Cir. 1990); *Berkic v. Crichton*, 761 F.2d 1289, 1293-94 (9th
17  Cir. 1985)).  The extrinsic test "focuses on 'articulable similarities between the plot,
18  themes, dialogue, mood, setting, pace, characters, and sequence of events' in two
19  works."  *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir.
20  1994) (citing *Berkic*, 761 F.2d at 1292).

21       ***B.*    The Dark Knight Rises *Is Not Substantially Similar to Plaintiff's*
22       *Works***

23       As a matter of law, there is no substantial similarity between *The Dark Knight*
24  *Rises* and Plaintiff's Works.   The Court should thus dismiss Plaintiff's infringement
25  claim with prejudice and without leave to amend.

26              **1.    Plot and Sequence of Events**
27       The plots of Plaintiff's Works and *The Dark Knight Rises* have virtually
28  nothing in common.  As described above, *The Dark Knight Rises*—the final chapter

1  in a trilogy—depicts the hero being forced to return from exile eight years after the

2  death of Two-Face (Harvey Dent).  (*See* Part II.B, *supra*.)  The reclusive Dark

3  Knight (Batman) returns to save Gotham City from the brutal guerrilla terrorist Bane

4  with the help of the enigmatic Selina Kyle (Catwoman).  (*See id.*)  Plaintiff's Works,

5  in contrast, involve (1) a Supreme Being returning to the world he had created in

6  order to destroy all individuals who had been unfaithful to him (*The World of*

7  *Jupiter*), and (2) a villain abusing time-travel technology in order to dominate the

8  world unless two protagonists (Earth and Mars) can prevent him from doing so

9  (*Crisis on Jupiter*).  (*See* Part II.A, *supra*.)

10      The Ninth Circuit has found plots with far more similarities to be dissimilar as

11  a matter of law.  *See, e.g.*, *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625

12  (9th Cir. 2010) (describing two works about American war veterans who traveled to

13  Japan to train the Japanese army to combat a samurai uprising); *Funky Films*, 462

14  F.3d at 1081 (describing two works where fathers who operate family-run funeral

15  homes die, resulting in the subsequent operation of the homes by two sons, one of

16  whom has been estranged from the family prior to the father's death); *Kouf*, 16 F.3d

17  at 1045-46 (describing two family comedy/adventure films about people who are

18  accidentally shrunk).

19      Given the absence of any actual similarities in plot or sequence, Plaintiff

20  offers a list of "comparisons" between the works.  (*See* Compl. at 22-23.)  Plaintiff's

21  comparisons fail because (1) many of the plot lines he attributes to *The Dark Knight*

22  *Rises* are *not in the movie*, and (2) the similarities actually in the film are too generic

23  to enjoy copyright protection.  Individually and collectively, Plaintiff's comparisons

24  are insufficient to establish substantial similarity as a matter of law.

25      As a preliminary matter, there is no time travel, space travel, or brain-implant

26  technology in *The Dark Knight Rises*.  (*See* RJN, Exh. H; Part II.B, *supra*.)  The

27  Court may ignore Plaintiff's allegations as to these "similarities."  *See Stechman v.*

28  *Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (observing that courts

CALDWELL
LESLIE &
PROCTOR

-13-

may disregard factual allegations that are contradicted by judicially noticeable facts).  As but one example, Plaintiff's claim that the "mechanical casing on Bane's head" is from "experimentation of brain implants" (Compl. at 27) is demonstrably false:  Bane uses a mask—not brain-implant technology—as a pain-relief device for a childhood injury.  (*See* RJN, Exh. H at 1:42:14.)

As for the other allegations of time and space travel and brain implants, Plaintiff's reliance on alleged footage that is nowhere to be found in *The Dark Knight Rises* (*see* Compl. at 17-19, 22) is misplaced.  *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986) (where there is no substantial similarity between a screenplay and the final film, earlier drafts are irrelevant); *Muller v. Twentieth Century Fox Film Corp.*, 794 F.Supp.2d 429, 433 n.1 (S.D.N.Y. 2011), *aff'd sub nom. Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012) (same); *Flaherty v. Filardi*, 388 F.Supp.2d 274, 284 n.4 (S.D.N.Y. 2005) (same).  Because no substantial similarity exists between Plaintiff's Works and the final version of *The Dark Knight Rises*, the Court need not consider Plaintiff's descriptions of the alleged footage that Defendants purportedly omitted from the film.[7]

Limited to purported similarities actually present in both works, Plaintiff's allegations boil down to the following:

- Both works present a villain who stole dangerous technology from a scientist; and

- The villain in each work used to be an associate of the protagonist (and a larger organization) but then "went rogue," and is now assisted by mercenaries.

_____

[7] Even if the Court were to consider the concepts of time travel and brain-implant technology that Plaintiff alleges were cut from *The Dark Knight Rises*, these themes are too generic to implicate copyright infringement.  *See, e.g.*, *Feldman v. Twentieth Century Fox Film Corp.*, 723 F.Supp.2d 357, 366 (D. Mass. 2010) ("time travel is a general idea that is not subject to copyright protection").

(Compl. at 22-23.)  The Court, however, must "look[] beyond the vague, abstracted idea of a general plot" when assessing similarities.  *Berkic*, 761 F.2d at 1293. "General plot ideas are not protected by copyright law; they remain forever the common property of artistic mankind."  *Id.* (citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984); 3 *M. Nimmer on Copyright* § 13.03[A] (1984)). "Scenes-a-faire, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement."  *Cavalier*, 297 F.3d at 823 (citing *Berkic*, 761 F.2d at 1294.  A villain stealing technology from a scientist for evil purposes, and a formerly benign individual "going rogue" against his former ally, are classic examples of "general plot ideas" that "flow necessarily or naturally from a basic plot premise," *Berkic*, 761 F.2d at 1293; *Cavalier*, 297 F.3d at 823, which are woefully insufficient to sustain a copyright infringement claim.

### 2.    Characters

Only characters that are "especially distinctive" are protected by copyright law.  *Olson v. Nat'l Broad. Co., Inc.*, 855 F.2d 1446, 1452 (9th Cir. 1988) (citing cartoon characters as an example of a distinctive, copyrightable character); *Feldman*, 723 F.Supp.2d at 367 ("copyright protection does not extend to stock characters, such as a blond, blue-eyed hero or doctors in 'hot and cold' romances"). Characters with "traits that flow naturally from the works' shared premises" cannot serve as a basis for infringement.  *Benay*, 607 F.3d at 626 (citing *Olson*, 855 F.2d at 1451-53).

Plaintiff alleges that Bane (the villain in *The Dark Knight Rises*) is copied from two of his characters in *Crisis on Jupiter*:  General 322 and Cifer.  (*See* Compl. at 24-25 (General 322); 22-23; 27 (Cifer).)  Comparing Bane and General 322, Plaintiff alleges "[t]hey are both bodybuilders and in virtually identical military style wardrobe."  (*Id.* at 24.)  Even accepting this allegation as true, the concept of a muscular villain dressed in a military-style outfit is too common to be protectable. *See, e.g., Althouse v. Warner Bros. Entm't*, No. CV 13-00696, 2014 WL 2986939,

1    at *3 (C.D. Cal. Apr. 28, 2014) (characters that have an enemy whom they hate and

2    that have nightmares of their significant other dying are standard elements common

3    to film and literature that are not protected by copyright law).

4         Moreover, as Plaintiff admits, his visualization of General 322 was not even

5    his own.  The character photographed in the Complaint (*see* Compl. at 24, Exh. 22)

6    is not Plaintiff's but rather "a character from the game 'Gears of War' named

7    'Augustus Cole.'"  (Compl. at 24.)  As Plaintiff did not create the image of General

8    322, he lacks standing to assert claims arising from its infringement.  *See Benay,*

9    607 F.3d at 624 (observing that ownership of a valid copyright is an essential

10   element of a copyright infringement claim).

11        As for Cifer, his only similarity with Bane is that both inhabit the

12   stereotypical role of evil villains intent on inflicting harm on the protagonists and

13   the greater population for their own empowerment.  This, too, is neither a distinctive

14   nor protectable idea.  The generic nature of Cifer's allegedly copied traits is

15   evidenced by the fact that Plaintiff has now alleged that Cifer is the basis for wildly

16   different characters in four motion pictures:  Boris the Alien (an evil, bearded, one-

17   armed alien) in *Men in Black III*; David (a form of artificial intelligence) in

18   *Prometheus*; Bane (a masked, human militant) in *The Dark Knight Rises*; and

19   unnamed "supporting characters" (Compl. at 10) in *Jupiter Ascending*.  (*See* RJN,

20   Exhs. D, F.)  In each instance, although Plaintiff attempts to draw parallels between

21   characters in his works and the film in question, there are "few real similarities

22   between any of them."  *Funky Films*, 462 F.3d at 1078.

23        Finally, the presence of characters in each work that do *not* appear in the other

24   weighs in favor of finding that the works are not substantially similar.  *See id.* at

25   1078-79.  There are dozens of characters in *The Dark Knight Rises* without

26   counterparts (alleged or actual) in Plaintiffs' Works, and aside from Cipher and

27   General 322, Plaintiff does not allege that Defendants copied the four other

28   characters in *Crisis on Jupiter* (Earth, Mars, Kurzweil, and Real Name Unknown

(*see* Compl., Exh. 1)), and does not claim Defendants copied any of the characters in *The World of Jupiter* whatsoever.[8]

### 3.   Mood, Pace, Theme, Setting, and Dialogue

The works are completely different in every other relevant respect as well.

*Mood*.  Plaintiff's Works present ominous stories full of dissolute people who have angered their creator. *The World of Jupiter* is a creation myth in which the Supreme Being returns to destroy all people who have lost their faith in him. *Crisis on Jupiter* addresses people who have endangered themselves by engaging in time travel and losing faith.  In contrast, *The Dark Knight Rises* is a battle between a military revolutionary intent on destroying Gotham City and a billionaire socialite dedicated to protecting the city from the criminal underworld.  To the extent that Plaintiff's Works and *The Dark Knight Rises* both present dark adventures containing violence, such vague similarities in mood are shared by hundreds of films and are not a basis for infringement.

*Pace*.  *Crisis on Jupiter* comprises an eight-slide PowerPoint presentation, and *The World of Jupiter* is a two-paragraph Word document.  (*See* Compl., Exhs. 1, 2.)  In contrast, *The Dark Knight Rises* develops its story over 165 minutes of film. (*See* RJN, Exh. H.)  To the extent Plaintiff's Works even have a pace, it is incomparable to *The Dark Knight Rises*.  Indeed, "[t]he time period within which the movie is set is a factor for determining the pace of the movie." *Campbell v. Walt Disney Co.*, 718 F.Supp.2d 1108, 1115 (N.D. Cal. 2010).  Whereas *The Dark Knight Rises* takes place in a relatively short period of time (*see* Part II.B, *supra*), Plaintiff's Works are far broader in temporal scope, involving the creation of a whole world, followed by evolution over multiple generations and an ultimate existential crisis.  (*See* Compl., Exhs. 1, 2.)

---

[8] Even if he had, those characters—Jupiter, Man, Woman, Earth, Heaven, Peace, and Love (*see* Compl., Exh. 2)—are too archetypal to be protectable. *See Feldman*, 723 F.Supp.2d at 367 (stock characters are not entitled to copyright protection).

CALDWELL
LESLIE &
PROCTOR

*Theme*.  Plaintiff's Works invoke a world where humans were created by alien creators; Plaintiff admits *The World of Jupiter* is a "short story creation myth." (Compl., ¶ XII.)  In contrast, *The Dark Knight Rises* is an epic superhero film focusing on humans in Gotham City.  To the extent each of the works could be interpreted as commentary on the tension between the forces of good versus evil, such a theme is as ancient as it is fundamental to literature.  *See Cavalier*, 297 F.3d at 823 ("[f]amiliar stock scenes and themes that are staples of literature are not protected" and hence cannot serve as grounds for substantial similarity); *Goldberg v. Cameron*, 787 F.Supp.2d 1013, 1020-21 (N.D. Cal. 2011) (themes that are commonplace in science fiction are not protectable); *Stromback v. New Line Cinema*, 384 F.3d 283, 296-97 (6th Cir. 2004) ("the sequence of certain events (main characters leaving Hell, battling their brother, the attempted killing of the main character), racial allusions and a love interest" are "common themes and ideas throughout literature and are beyond any level of abstraction at which copyright protection might begin to attach").

*Setting*.  The Complaint does not allege any similarities in setting between the works.  *Crisis on Jupiter* appears to take place on Jupiter.  It is not clear whether *The World of Jupiter* take places on Jupiter, Earth, or another world.  *The Dark Knight Rises*, on the other hand, takes place entirely on Earth, specifically in and under Gotham City, Wayne Manor, the Bat Cave, Bane's prison, and Florence, Italy. (*See* Part II.B, *supra*.)  Because none of these locales is featured in Plaintiff's Works, there can be no similarity.

*Dialogue*.  "[E]xtended similarity of dialogue [is] needed to support a claim of substantial similarity."  *Olson*, 855 F.2d at 1450.  Plaintiff's Works have no dialogue, and Plaintiff does not allege otherwise.  In contrast, *The Dark Knight Rises* is a 165-minute film replete with dialogue.

Ultimately, there are virtually no similarities between Plaintiff's Works and *The Dark Knight Rises*, and certainly no similarities of protectable expression that

1  could support Plaintiff's infringement claim.  No amount of pleadings or exhibits

2  can change that fact, and Plaintiff's claim that *The Dark Knight Rises* infringes his

3  works should be dismissed with prejudice and without leave to amend.

4             *C.*      **Jupiter Ascending *Is Not Substantially Similar to Plaintiff's Works***

5         This Court should also dismiss Plaintiff's claim that *Jupiter Ascending*

6  infringes his Works, as once again, there is a complete absence of any similarity.

7                  **1.**     **Plot and Sequence of Events**

8         As set forth above, *Jupiter Ascending* involves a young woman named Jupiter

9  Jones discovering her destiny as an heiress of intergalactic nobility.  (*See* Part II.C,

10  *supra*.)  After Caine Wise, a genetically engineered ex-military hunter, arrives on

11  Earth to track her down, Jones begins to glimpse the fate that has been waiting for

12  her all along.  (*See id.*)  Her genetic signature marks her as next in line for an

13  inheritance that could alter the balance of the cosmos.  (*See id.*)  With the help of

14  Wise, she fights to protect the inhabitants of Earth from an ancient and destructive

15  industry involving the harvesting of living creatures to produce a type of youth

16  serum that enables immortality.  (*See id.*)  The plot and sequence of events in

17  *Jupiter Ascending* has nothing to do with Plaintiff's Works.  (*Compare* Part II.C,

18  *supra* with Part II.A, *supra*.)  *See Althouse*, 2014 WL 2986939, at *3 (rejecting

19  infringement claim where the basic premises of the two works were "so different

20  that that it would be unreasonable to find their plots substantially similar").

21         In addition, as he did with *The Dark Knight Rises*, Plaintiff makes claims

22  about *Jupiter Ascending* that are demonstrably false and can be ignored.  *See*

23  *Stechman*, 143 F.3d at 1295-96.  Plaintiff claims, for example, that *Jupiter*

24  *Ascending* "is premised on the fact of life on all planets having originated from the

25  planet Jupiter by Supreme beings from Jupiter."  (Compl. at 10.)  There is, however,

26  nothing in *Jupiter Ascending* suggesting that planetary life originated on the planet

27  Jupiter, or that it did so because of a supreme being on Jupiter.  (*See* RJN, Exh. I;

28  Part II.C, *supra*.)  To the contrary, the human species on Earth in *Jupiter Ascending*

-19-

1   were established by individuals from another planet in a distant solar system.  (*See*

2   Part II.C, *supra*; RJN, Exh. I at 44:56, 45:38.)  Indeed, the ending credits show that

3   the planets making up the universe form endless DNA patterns, suggesting an alien

4   creator on a scale much vaster than a planet in our solar system.  (*See* Part II.C,

5   *supra*.)  The *only* references to the planet Jupiter in *Jupiter Ascending* are (1) the

6   fact that the main character's first name is Jupiter (her mother named her after her

7   father's favorite planet), and (2) the character Balem operates a refinery on a planet

8   that looks like Jupiter (both have "Great Red Spots").  (*See id.*)

9          Stripped of its falsehoods, the Complaint alleges the following similarities in

10  plot and sequence between *Jupiter Ascending* and Plaintiff's Works:

11         •      Humans were created by alien creators;

12         •      Supreme beings threaten mass extinctions;

13         •      The protagonists in each work are the only ones who can save their

14                home planets;

15         •      The protagonists use interplanetary travel to overcome the forces of

16                evil; and

17         •      Lead characters in each work are members of the military.

18  (*See* Compl. at 10.)

19         Each of these similarities is extraordinarily common in science fiction (and

20  other genres) and thus falls far short of copyright protection.  (*See* Part IV.B.1,

21  *supra* (citing *Benay*, 607 F.3d at 625; *Funky Films*, 462 F.3d at 1081; *Kouf*, 16 F.3d

22  at 1045-46; *Berkic*, 761 F.2d at 1293; *Cavalier*, 297 F.3d at 823).)

23         Plaintiff argues that "[t]he fact that the two works have identical titles also

24  weighs in Plaintiff's favor."  (Compl. at 13.)  As is self-evident, the works do not

25  have identical titles.  Plaintiff's Works are entitled *Crisis on Jupiter* and *The World*

26  *of Jupiter*; Defendants' work is *Jupiter Ascending*.  Each title shares one word,

27  "Jupiter," a term deployed in thousands of artistic works over the millennia by

28  individuals seeking to invoke, *inter alia*, the ancient Romans' chief deity and a

1  planet in our solar system.  In any event, even if the titles were similar in terms of

2  any material original to Plaintiff, "[a] similarity of titles is not enough to overcome

3  the failure to show that the contents of the [works] is substantially similar."  *Phillips*

4  *v. Murdock*, 543 F.Supp.2d 1219, 1225 (D. Haw. 2008).

5              **2.       Characters**

6         The Complaint alleges that unnamed "supporting characters" in *Jupiter*

7  *Ascending* mimic the concept of brain or eye-implant technology from his character

8  Cifer in *Crisis on Jupiter*.  (Compl. at 10, 11.)  In this regard, Plaintiff also

9  compares an unnamed character in *Jupiter Ascending* by using a photograph.  (*See*

10  *id.* at 11.)[9]  Even assuming, *arguendo*, that a character in *Jupiter Ascending* has

11  brain or eye-implant technology, the concept of such implants is commonplace in

12  science fiction, as Plaintiff himself acknowledged in a prior lawsuit.  (*See* RJN, Exh.

13  G at 3 n.1.)

14         Indeed, Plaintiff himself copied characters with brain implants from third

15  parties' works when he developed *Crisis on Jupiter*.  To visualize his brain-

16  implanted character Kurzweil in *Crisis on Jupiter*, for example, Plaintiff simply

17  copied the photograph of the character Locutus (played by Patrick Stewart) from an

18  episode of *Star Trek*.  (*See* Compl., Exh. 1, slide 7.)  Likewise, for the brain-

19  implanted appearance of his character Cifer, Plaintiff simply copied an image from

20  another (illegible) website.  (*See id.*, Exh. 1, slide 4.)  Stripping away Plaintiff's use

21  of images he did not create and thus does not own, *see Benay,* 607 F.3d at 624,

22  Plaintiff is left with nothing more than a vague invocation of the generic concept of

23  brain or eye implants, which fall far short of a protectable expression.  *See Cavalier*,

24  297 F.3d at 823 ("[f]amiliar stock scenes and themes" cannot serve as grounds for

25

26  _____

27  [9] The photograph is illegible in the copies of the Complaint that Plaintiff served on

28  Defendants and uploaded onto Pacer.  (*See* Compl. at 11.)

1    substantial similarity); *Goldberg*, 787 F.Supp.2d at 1020-21 (themes that are

2    commonplace in science fiction are not protectable).

3            Plaintiff also argues that both Caine Wise in *Jupiter Ascending* and Earth and

4    Mars in *Crisis on Jupiter* are members of the military who help save planets.

5    (Compl. at 10.)  Even accepting this allegation as true, this concept is even more

6    commonplace than brain or eye implants, and equally inadequate to establish

7    copyright infringement.

8            Finally, as with *The Dark Knight Rises*, *Jupiter Ascending* contains dozens of

9    characters with no actual or alleged similarities to the characters in Plaintiff's

10   Works, which weighs heavily against a finding of similarity.  *See Funky Films*, 462

11   F.3d at 1078-79.

### 3.    Mood, Pace, Theme, Setting, and Dialogue

12

13           **Mood.**  *Jupiter Ascending* combines special effects and an innovative musical

14   score with a female science-fiction hero attempting to romance an alien.  These

15   creative qualities have nothing in common with *The World of Jupiter* or *Crisis on*

16   *Jupiter* other than perhaps the familiar science fiction tropes of aliens and space

17   travel.

18           **Pace.**  *Jupiter Ascending* is a 127-minute full-length motion picture.  *The*

19   *World of Jupiter* is a two-paragraph Word document and *Crisis on Jupiter* is an

20   eight-page PowerPoint presentation.  *Jupiter Ascending* takes place in a

21   straightforward narrative arc across a period of several years, whereas *Crisis on*

22   *Jupiter* appears to rely heavily on time travel over hundreds of years and *The World*

23   *of Jupiter* takes place on a Biblical time scale.  The pace of the works is

24   incomparable.

25           **Theme.**  The theme of *Jupiter Ascending* could be described as the

26   consumption or use of a working class for the benefit of their indifferent overseers.

27   (*See* Part II.C, *supra*.)  Earth is essentially a human farm, seeded after the extinction

28   of the dinosaurs by the an alien ruling class, until saved by the protagonist.  (*See id.*)

In contrast, *The World of Jupiter* appears to be a cynical story about the lesser attributes of humans and their inability to remain faithful to their supreme being, and *Crisis on Jupiter* addresses heroes trying to saving a world in crisis due to time travel technology.  (*See* Part II.A, *supra*.)  To the extent Plaintiff's Works share with *Jupiter Ascending* common themes such as good versus evil, human versus alien/supreme being, anti-authoritarianism, or the perils of advanced technologies, "[t]hese are common themes and ideas throughout literature and are beyond any level of abstraction at which copyright protection might begin to attach." *Stromback*, 384 F.3d at 296.

**Setting.**  *Jupiter Ascending* takes place in Chicago, Illinois and a nearby farm; St. Petersburg, Russia; various spaceships; and distant planets.  (*See* Part II.C, *supra*.)  One of the planets, home to Balem's mining facility, bears a resemblance to Jupiter due its Great Red Spot.  Even assuming, *arguendo*, that this planet is in fact Jupiter, a common setting of a given planet (or outer space in general) among works is far too generic to establish a substantial similarity.

**Dialogue.**  Again, Plaintiff's Works have no dialogue, so this inquiry weighs entirely against Plaintiff.  *See Olson*, 855 F.2d at 1450.

Plaintiff's Works have nothing more in common with *Jupiter Ascending* than *The Dark Knight Rises*.  Whatever trivial or superficial similarities exist between the works, those similarities are not protectable under copyright law and hence cannot form the basis for any infringement claim.  *See, e.g.*, *Funky Films*, 462 F.3d at 1081 (rejecting infringement claim in the absence of "any concrete or articulable similarities").

### D.    *Plaintiff's Conspiracy Allegations Are Irrelevant*

Much of the Complaint is filled with allegations of a sinister conspiracy against Plaintiff and his family by Defendants, the Los Angeles Film School, Congresswoman and Minority Leader of the U.S. House of Representatives Nancy Pelosi, Sony Pictures and its former co-chairwoman Amy Pascal, Twentieth Century

1  Fox, and the Beverly Hills Police Department.  (*See, e.g.*, Compl. at 30-37.)
2  Because these allegations are irrelevant to the lack of substantial similarities among
3  the works, for the purposes of this Motion Defendants will not burden the Court
4  with a detailed response.  For the record, Defendants deny all of Plaintiff's
5  allegations.

6          **E.     *Leave to Amend Would Be Futile***

7          The general rule that leave to amend should be granted liberally does not
8  apply here, because Plaintiff's "pleading could not possibly be cured by the
9  allegation of other facts."  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942
10 (9th Cir. 2009) (citing *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000);
11 *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 983 (9th Cir. 2000)).
12 Nothing Plaintiff could allege in an amended complaint could change the fact that
13 neither *The Dark Knight Rises* nor *Jupiter Ascending* is in any way similar to
14 Plaintiff's Works.  The defects in Plaintiff's Complaint are thus incurable, and the
15 Court should deny leave to amend.  *See Campbell*, 718 F.Supp.2d at 1116 (no leave
16 to amend where the works were not substantially similar as a matter of law); *Gadh*
17 *v. Spiegel*, No. CV 14-855, 2014 WL 1778950, at *6 (C.D. Cal. Apr. 2, 2014)
18 (dismissal without leave to amend where works were not substantially similar);
19 *Mandeville-Anthony v. Walt Disney Co.*, No. CV 11-2137, 2012 WL 4017785, at
20 **4-5 (C.D. Cal. July 28, 2012) (same).  (*See also*, RJN, Exhs. E, G.)
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**V.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and dismiss Plaintiff's Complaint with prejudice.  Because this is now Plaintiff's fourth Complaint alleging infringement of *The World of Jupiter* or *Crisis on Jupiter*, Defendants also request that the Court issue a warning to Plaintiff that, if he files any additional such complaints, the Court will entertain a request for an order declaring him a vexatious litigant.

DATED:   August 10, 2015          CALDWELL LESLIE & PROCTOR, PC
                                  LINDA M. BURROW
                                  ARWEN R. JOHNSON
                                  MATTHEW O'BRIEN


                                  By _____/s/_____
                                        LINDA M. BURROW
                                  Attorneys for Defendants Warner Bros.
                                  Entertainment Inc., Legend Pictures, LLC
                                  (erroneously sued as Legendary Pictures),
                                  Christopher Nolan, Jonathan Nolan, David S.
                                  Goyer, Andrew Wachowski, and Lana
                                  Wachowski

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 725 South Figueroa Street, 31st Floor, Los Angeles, CA 90017-5524.

On August 10, 2015, I served true copies of the following document(s) described as **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT WITH PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

Constantino Basile                    Plaintiff Pro Se
10630 Moorpark Street, #202
North Hollywood, CA 91602

Tel.:  (213) 304-7965

**BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by Overnight Delivery and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of Overnight Delivery or delivered such document(s) to a courier or driver authorized by Overnight Delivery to receive documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 10, 2015, at Los Angeles, California.

_____
Susan Crippen

CALDWELL
LESLIE &
PROCTOR